## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JAMES A.,[1]              :    Case No. 2:24-cv-03677
                         :
    Plaintiff,           :
                         :    District Judge James L. Graham
                         :    Magistrate Judge Caroline H. Gentry
vs.                      :
                         :
COMMISSIONER OF THE SOCIAL :
SECURITY ADMINISTRATION, :
                         :
    Defendant.           :

## REPORT AND RECOMMENDATION[2]

Plaintiff filed applications for Disability Insurance Benefits and Disabled Widower's Insurance Benefits in April 2017.[3] Plaintiff's claims were denied initially and upon reconsideration. After two hearings at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff filed an action with this

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

[3] Plaintiff filed his applications on February 9, 2018. He alleged a disability onset date of January 1, 2009, and so he impliedly requested to reopen his prior Title II applications filed on April 4, 2017 and July 28, 2017. The ALJ concluded that the record documented new and material evidence that warranted reopening the prior determinations pursuant to 20 C.F.R. § 404.989. Therefore, the ALJ decision at issue relates back to the applications filed on April 4, 2017.

Court.[4] This Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g), pursuant to a joint motion by the parties. The Appeals Council remanded the case pursuant to the District Court's order. A different ALJ held another hearing and again concluded that Plaintiff was not "disabled" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed what is now his second action in this Court

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, the undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED.

## I.  BACKGROUND

Plaintiff asserts that he has been under a disability since January 1, 2009. At that time, he was forty-nine years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff changed age categories and was a "person closely approaching advanced age" and subsequently a "person of advanced age" prior to the end of the relevant period at issue.[5] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

---

[4] Assigned to Magistrate Judge Kimberly A. Jolson, Case Number 2:22-cv-02486.

[5] Plaintiff's date last insured for purposes of his Disability Insurance Benefits application was June 30, 2014. Regarding his claim for Disabled Widower's Insurance Benefits, the prescribed period ended on October 31, 2015.

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-11 at PageID 2097-125), Plaintiff's Statement of Errors ("SE," Doc. No. 10), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Disabled Widower's Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may

3

not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even

4

if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff did not engage in substantial gainful activity from the alleged disability onset date of January 1, 2009 to October 31, 2015, the end of the prescribed period.

Step 2: He had the severe impairments of alcohol abuse disorder, bereavement disorder, post-traumatic stress disorder (PTSD), and affective and anxiety-related disorders.

Step 3: From January 1, 2009 through October 31, 2015, considering the substance use, Plaintiff's impairments met the requirements of Listings 12.04 and 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1.

From January 1, 2009 through October 31, 2015, if Plaintiff had stopped the substance use, he would have had the severe impairments of bereavement disorder, PTSD, and affective and anxiety-related disorders.

From January 1, 2009 through October 31, 2015, if Plaintiff had stopped the substance use, he would not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: From January 1, 2009 through October 31, 2015, if Plaintiff had stopped the substance use, his residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v.*

> *Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of a full range of work at all exertional levels, subject to the following limitations: "[H]e could have worked in an environment free of fast paced production requirements involving only simple work-related decisions with few, if any, workplace changes."
>
> Plaintiff would have been unable to perform any of his past relevant work, even if he stopped the substance use.

Step 5:   From January 1, 2009 through October 31, 2015, if Plaintiff had stopped the substance use, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed.

(Decision, Doc. No. 7-11 at PageID 2103-17.) These findings led the ALJ to conclude that during the relevant time period from January 1, 2009 through October 31, 2015, Plaintiff's substance use disorder was a contributing factor material to the determination of disability and he would not have been disabled if he had stopped the substance use. The ALJ also concluded that because the substance use disorder was a contributing factor material to the determination of disability, Plaintiff was not disabled within the meaning of the Social Security Act and so was not entitled to benefits. (*Id.* at PageID 2117.)

## B.    Reviewing Psychologist Todd Finnerty, Psy.D.

Todd Finnerty, Psy.D. reviewed Plaintiff's medical records and provided two narrative reports at the request of Plaintiff's attorney in July 2020. (AR, Doc. No. 7-10 at PageID 2031-33, 2041-44.) Dr. Finnerty summarized Plaintiff's medical records that were dated from November 2004 to August 2019 and discussed certain mental diagnoses. (*Id.* at PageID 2031-32, 2041-43.) Dr. Finnerty concluded that prior to Plaintiff's date last insured of June 30, 2014, Plaintiff's mental impairments met the criteria for Listing

12.06. (*Id.* at PageID 2032-33.) He explained that Plaintiff required assistance from family members to care for his son, had marginal adjustment in carrying out daily activities, had "involvement from the city over the cleanliness of his home and yard," and was expected to decompensate again with additional stressors. (*Id.* at PageID 2033.) According to Dr. Finnerty, the records showed "sufficient evidence to establish the chronic presence of depression and anxiety which are not due to substance use" and which had "only abated marginally over the course of the relevant time period with treatment." (*Id.*) Dr. Finnerty also noted that Plaintiff had not improved with sobriety but "continued to deteriorate." (*Id.*)

Regarding functional limitations, Dr. Finnerty opined that Plaintiff would be unable to respond appropriately to changes in a routine work setting, and so he would be unable to sustain a forty-hour workweek or perform any job. (*Id.* at PageID 2033.) He noted that Plaintiff's adaptation was significantly limited, that his "substance use was an indicator of poor coping," and that he had "continued to exhibit substantial anxiety symptoms despite sustained sobriety." (*Id.*) Dr. Finnerty further opined that Plaintiff was "not employable." (*Id.* at PageID 2044.) He explained:

> [Plaintiff] would not be able to deal with changes in a routine work setting. He lacks the ability to respond appropriately to changes in a routine work setting; this would preclude him from sustaining a [forty]-hour work week or performing any job. He has had marginal adjustment, a history of unsustained work and very limited [activities of daily living] which supports [sic] significant functional impairment.

(*Id.*)

Dr. Finnerty concluded that Plaintiff's alcohol use was not a material contributing factor to his disability. (AR, Doc. No. 7-10 at PageID 2033.) Dr. Finnerty stated that the records did not show a sustained period of sobriety during which Plaintiff did not experience disabling limitations, and that the record did not "otherwise establish that [Plaintiff] would not experience these limitations in the absence of substance use." (*Id.*) Dr. Finnerty further stated:

> [Plaintiff's] mental health conditions, symptoms and diagnoses did not vary significantly either before 2012 or after 2012. The Alcohol Use diagnosis was changed to 'in sustained remission' as evidenced by the ongoing symptomatology and reports of the various doctors from 2009 and thereafter. [Plaintiff] experienced grief which led to a relapse, however he subsequently achieved sustained sobriety yet continued to have significant anxiety and depression.

(*Id.*)

Dr. Finnerty also completed a Medical Source Statement As To Ability To Perform Work Related Activities (Mental) Form. (AR, Doc. No. 7-10 at PageID 2034-36.) Dr. Finnerty opined that Plaintiff was markedly impaired (defined as "unable to function in this area from [twenty-six percent to fifty percent] of the work day or work week") in the ability to respond appropriately to changes in the work setting. (*Id.* at PageID 2034-35.) Dr. Finnerty also opined that Plaintiff was "likely to have partial or full day unscheduled absences from work occurring [three] or more partial or whole days per month due to the diagnosed conditions and/or side effects of medications," and that Plaintiff's condition was "likely to deteriorate if he [was] placed under stress, particularly the stress of an [eight] hour per day, [five] day per week job." (*Id.* at PageID 2036.) According to Dr. Finnerty, the limitations had persisted since January 1, 2009, and after

8

alcohol detoxification in May 2012. (*Id.*) Dr. Finnerty provided the following explanation in support of his opinions: "[Plaintiff] lacks the ability to respond appropriately to changes in a routine work setting; this precludes him from sustaining a [forty-]hour work week or performing any job." (*Id.*)

The ALJ summarized but criticized Dr. Finnerty's assessment, noting that "for support, Dr. Finnerty primarily cited to evidence in the record well prior or well after the period at issue." (Decision, Doc. No. 7-11 at PageID 2114.) The ALJ explained that because some of his opinions (such as that Plaintiff is disabled) were on issues that are "reserved to the Commissioner," those opinions were "neither valuable nor persuasive … [and] we will not provide any analysis about how we considered such evidence." (*Id.* at PageID 2114-15 (quoting 20 C.F.R. § 404.1520b(c)).)

The ALJ also disagreed with Dr. Finney's assessment of the evidence. She stated that although "the record does document anxiety and depression despite sobriety . . . the documentation just prior to the period at issue, as well as the end of the period at issue and just beyond, document improved functioning in the absence of alcohol abuse." (*Id.* at PageID 2115.) Indeed, the ALJ cited Plaintiff's corroborating statements to that effect:

> Furthermore, [Plaintiff] reported that it was due to alcohol use that he had problems taking medicine, cleaning his room, dressing, bathing, bedmaking, and washing clothes (9F/209); that at one time he declined addition of any psychiatric medications because he felt that depression had been more due to alcohol use (1F/78); and that he indicated that alcohol made his depression worse (6F/78).

(*Id.*) The ALJ reasoned that "the record supports that listing 12.06 was met due to alcohol abuse and that Dr. Finnerty's implication that [Plaintiff's] alcohol abuse was not material

to his disabling functioning is not supported by the treatment record showing improved functioning during times of sobriety, or consistent with [Plaintiff's] own reports." (*Id*. at PageID 2115.) Therefore, the ALJ concluded that Dr. Finnerty's opinion on the latter issue "is not persuasive." (*Id*.)

### C. Medical Expert Allen Heinemann, Ph.D.

Allen Heinemann, Ph.D. reviewed Plaintiff's medical records and testified as an impartial medical expert at the January 2021 hearing. (AR, Doc. No. 7-2 at PageID 91-99; *see also* AR, Doc. No. 7-10 at PageID 2045.) When asked to identify Plaintiff's medically determinable impairments, he stated that the medical records documented consistent treatment for a bipolar II disorder "particularly following the loss of his wife . . . in 2009," as well as for generalized anxiety disorder and alcohol abuse, for which Plaintiff was in remission as of late 2008 or early 2009. (AR, Doc. No. 7-2 at PageID 92.)

Next, the ALJ asked about Plaintiff's limitations in the "paragraph B" areas of functioning during the period at issue. Dr. Heinemann testified that Plaintiff was mildly limited in the ability to understand, remember, and apply information; moderately limited in the ability to interact with others and to maintain concentration, persistence, and pace; and markedly limited in the ability to adapt and manage. (AR, Doc. No. 7-2 at PageID 93.) He stated that Plaintiff's alcohol abuse did not "impact upon that assessment" because Plaintiff's providers had stated in 2009 and April 2017 that Plaintiff's alcohol abuse was in sustained remission. (*Id.* at PageID 93-94.)

Dr. Heinemann explained that he found marked impairment in Plaintiff's ability to adapt and manage himself because Plaintiff's bereavement "exacerbated the anxious and

10

depressive symptoms [Plaintiff] was experiencing prior to his wife's passing." (AR, Doc. No. 7-2 at PageID 94.) Dr. Heinemann cited a 2019 opinion from Jeffrey Lodge, M.D., Plaintiff's treating psychiatrist at a Veterans Administration Medical Center (VAMC) Behavioral Health Services clinic. (*Id.* (citing AR, Doc. No. 7-7 at PageID 756).) According to Dr. Heinemann, Dr. Lodge indicated that he had treated Plaintiff since March 2016 and stated that Plaintiff was "subject to emotional swings that prevented sustained work, [was] highly anxious around strangers, [and had] problems of angry outbursts to those stress tolerance [sic]." (*Id.*) Dr. Heinemann also cited an opinion from Cathy Della Mora, Ph.D., who performed a neuropsychological evaluation in November 2004. (AR, Doc. No. 7-2 at PageID 94 (citing AR, Doc. No. 7-7 at PageID 1091-94).) According to Dr. Heinemann, Dr. Della Mora's report indicated that "depression and anxiety account for what appear to be attention deficit disorder-like symptoms." (*Id.*) Dr. Heinemann acknowledged that a VAMC psychiatrist assigned a Global Assessment of Functioning (GAF) score of 60 in May 2014, and that such a score "is not in a severe range." (*Id.* (citing AR, Doc. No. 7-7 at PageID 662).) However, he opined that "the combination of symptoms appear[ed] similar to what is described subsequently." (*Id.*)

Dr. Heinemann stated that the "paragraph B" limitations that he assessed applied to the period at issue (namely, January 1, 2009 to October 31, 2015), as well as after that time. (AR, Doc. No. 7-2 at PageID 95.) Dr. Heinemann cited Dr. Finnerty's statement that Plaintiff experienced panic attacks and difficulty with change, as well as an April 2017 Disability Benefits Questionnaire in which a VAMC psychologist indicated that anxiety disorder, panic attacks, and depressive symptoms were "limiting [Plaintiff's]

performance." (*Id.* (citing AR, Doc. No. 7-9 at PageID 1875).) Dr. Finnerty opined that,

despite treatment, Plaintiff's condition appeared at "a consistent level of symptomatology

with functional consequences." (*Id.*) According to Dr. Heinemann:

> There is no point at which the symptoms appeared greater remit, so that he
> is less likely to have emotional swings, less likely to be anxious around
> strangers, [or] less likely to manage his anger. Clearly, if he was abusing
> alcohol, that would be relevant and material, but that appears to be in
> check.

(*Id.*)

Dr. Heinemann agreed with Dr. Finnerty's assessment that the "C criteria" were

met. (AR, Doc. No. 7-2 at PageID 95.) He stated that despite consistent mental health

treatment throughout the relevant period, Plaintiff had "minimal capacity to adapt to

changes in his environment." (*Id.*) Dr. Heinemann also opined that, based on his review

of the medical records, Plaintiff's mental impairments resulted in an inability to deal with

changes in a routine work setting, to respond appropriately to changes in a work

environment, and to interact appropriately with coworkers and the public. (*Id.* at PageID

96.) Regarding social interactions, Dr. Heinemann clarified that Plaintiff could tolerate

occasional interactions with coworkers and supervisors but could have no interaction

with the public. (*Id.*) Dr. Heinemann further opined that Plaintiff "would need more work

breaks – rest periods than is typical." (*Id.* at PageID 98.) Dr. Heinemann testified that

although he did not believe that the additional rest periods would preclude competitive

employment, the need for breaks "would limit the complexity of the work that [Plaintiff]

could do." (*Id.* at PageID 98-99.)

The ALJ concluded that Dr. Heinemann's opinions were unpersuasive because he supported them by "primarily cit[ing] records well prior or well after the period at issue." (Decision, Doc. No. 7-11 at PageID 2114.) The ALJ further found Dr. Heinemann's opinions unpersuasive because his statement that Plaintiff's substance was in remission "is inconsistent with the documented record . . . confirming substantial alcohol abuse for extended periods, and further confirmed by [Plaintiff's] more recent testimony acknowledging daily, substantial use for years, resulting in passing out or little functioning during the day other than taking his son to and from school." (*Id.*) Further, the ALJ explained that Dr. Heinemann's testimony "seemed at least somewhat contradictory and inconsistent regarding statements with respect to [Plaintiff's] inability to perform certain functions followed by statements that [Plaintiff] was capable in similar areas of functioning." (*Id.*)

## IV.   LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred in her analysis of the medical opinions of reviewing medical consultant Dr. Finnerty and medical expert Dr. Heinemann. (SE, Doc. No. 10 at PageID 2313-21.) The undersigned disagrees. Instead, because the ALJ did not err in her analysis of the medical opinion evidence and substantial evidence supports her conclusions, the undersigned recommends that the ALJ's decision be affirmed.

### A.   The ALJ's Analysis of Supportability and Consistency Factors.

The ALJ was required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his]

13

impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar.

14

20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[6] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id.*

---

[6] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### B. Materiality Of Drug Addiction Or Alcoholism.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Social Security Ruling (SSR) 13-2p interprets this regulation and governs the evaluation of cases involving drug addiction and alcoholism (DAA Titles II

and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 2013 WL 621536 (February 20, 2013), amended, March 22, 2013; *see also* 20 C.F.R. § 404.1535.

SSR 13-2p applies if "evidence from acceptable medical sources … establish[es] that DAA is a medically determinable impairment(s)." 2013 WL 621536 at *3 (citing 20 C.F.R. § 404.1513). The ALJ will determine materiality if: (1) there is "medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder," and (2) the claimant is found to be disabled "considering all impairments, including the DAA." *Id.* at *4; *see also* 20 C.FR. § 404.1535. The ALJ must decide "whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol, that is . . . whether DAA is *material* to the finding that the claimant is disabled." *Id*. (emphasis in original). If the claimant were to stop using drugs or alcohol, DAA is material if he would not be disabled in that circumstance and is not material if he would be disabled in that circumstance. *Id*.

### C. The ALJ Did Not Err In Her Evaluation Of The Medical Opinion Evidence.

Plaintiff asserts that the ALJ failed to adequately address the supportability and consistency factors when she evaluated the opinions of Drs. Finnerty and Heinemann. (SE, Doc. No. 10 at PageID 2317.) According to Plaintiff, the ALJ only "superficially" addressed these factors and "cursorily declared that their opinions were not consistent with or supported by the record as a whole." (*Id.*) Plaintiff also asserts that the reasoning that the ALJ provided to discount their opinions was "inaccurate or unsupported by substantial evidence." (*Id.*) None of these assertions is well-taken.

17

1.      **The ALJ Adequately Addressed The Supportability And Consistency Factors When She Concluded That Dr. Heinemann's Opinions Were Not Persuasive, And Her Conclusions Are Supported By Substantial Evidence.**

The undersigned finds that the ALJ complied with the applicable regulations when she concluded that testifying medical expert Dr. Heinemann's opinions were not persuasive. The ALJ's explanation adequately addresses the supportability and consistency factors as required by 20 C.F.R. § 404.1520c(b)(2). Further, the undersigned finds that her conclusions are supported by substantial evidence.

The ALJ analyzed the supportability of Dr. Heinemann's testimony by explaining: "When asked to support his opinion of marked limitation in ability to adapt and manage, he primarily cited to evidence well prior to the alleged onset date or well past the end of the prescribed period." (Decision, Doc. No. 7-11 at PageID 2113.) The ALJ explained that she discounted Dr. Heinemann's opinions because "in support he primarily cited records well prior or well after the period at issue." (*Id.* at PageID 2114.) The ALJ also explained that Dr. Heinemann's testimony was not persuasive because parts of it were contradictory. (*Id.* at PageID 2113-14.) For example, the ALJ noted that Dr. Heinemann testified that Plaintiff experienced "an inability to interact appropriately with coworkers and the public," but also testified that Plaintiff "could tolerate occasional interaction with coworkers and supervisors but no interaction with the public in the work setting." (*Id.* at PageID 2113.) The ALJ concluded: "As summarized above, Dr. Heinemann's testimony seemed at least somewhat contradictory and inconsistent regarding statements with respect to [Plaintiff's] inability to perform certain functions followed by statements that

18

[Plaintiff] was capable in similar areas of functioning." (*Id.* at PageID 2114.) These explanations adequately address the supportability factor.

The ALJ also analyzed the consistency of Dr. Heinemann's opinions with the medical and other evidence in the record. (Decision, Doc. No. 7-1 at PageID 2113-14.) The ALJ pointed out the inconsistency between Dr. Heinemann's statement (upon which he based his opinions) that Plaintiff's substance use was in remission, and the record:

> Dr. Heinemann opined, with respect to the time of the date last insured, that [Plaintiff's] ability to understand, remember, and apply information was mildly limited; ability to interact with others was moderately limited; ability to concentrate, persist, and ability to adapt and manage was markedly limited. ***Dr. Heinemann stated that substance abuse did not impact that assessment as the alcohol abuse was in sustained remission, though [Plaintiff's] testimony and the record clearly document that that was not the case.*** Dr. Heinemann did indicate that alcohol would be material if it were present, but he did not conclude that it was present.

(*Id.* at PageID 2113 (emphasis added).) The ALJ also reasoned that Dr. Heinemann's testimony was "inconsistent with the documented record summarized above confirming substantial alcohol abuse for extended periods, and further confirmed by [Plaintiff's] more recent testimony acknowledging daily, substantial use for years, resulting in passing out or little functioning during the day other than taking his son to and from school." (*Id.* at PageID 2114.) These explanations adequately address the consistency factor.

Further, the ALJ's conclusions are supported by substantial evidence. When he summarized the medical records, Dr. Heinemann did indeed testify that Plaintiff was sober throughout the relevant time period. (AR, Doc. No. 7-2 at PageID 92-96.) Specifically, he stated that Plaintiff's alcohol abuse "appears to have been in remission [by] late 2008 or early 2009." (AR, Doc. No. 7-2 at PageID 92.) When the ALJ asked

whether alcohol abuse impacted his assessed limitations, Dr. Heinemann initially stated: "[T]he short answer is, no. 15F, Dr. Zephyrites, in 2009, states that the alcohol abuse is in remission." (*Id.* at PageID 93.) When the ALJ later asked Dr. Heinemann to explain his opinion that Plaintiff had a marked limitation in adapting or managing himself prior to June 2014, Dr. Heinemann testified: "Dr. Zephyrite's [sic] characterization of [Plaintiff], at 3F, 13F, 15F, 18F, most – more recently, [Veterans Administration] Medical Center, April 2017. Now, that's after the date last insured, but as the alcohol abuse was considered as being in remission at that – sustained remission at that point. And again, we have that statement as early as 2009." (*Id.* at PageID 94.) Finally, Dr. Heinemann explained: "There is no point at which the symptoms appeared greater remit, so that he is less likely to have emotional swings, less likely to be anxious around strangers, less likely to manage his anger. ***Clearly, if he was abusing alcohol, that would be relevant and material, but that appears to be in check***." (*Id.* at PageID 95 (emphasis added).)

Accordingly, substantial evidence supports the ALJ's conclusion that Dr. Heinemann relied on records dated prior to and after the relevant time period (at which times Plaintiff was sober) to conclude that Plaintiff was sober, and experienced disabling-level limitations, during the relevant time period. The ALJ's explanation for why she found Dr. Heinemann's opinions to be unpersuasive—because they were based on his erroneous factual belief, which was inconsistent with records showing that Plaintiff was not sober during the relevant time period—is supported by substantial evidence.

There is ample evidence in the record that Plaintiff's substance abuse was not in remission during the relevant time period (January 1, 2009 to October 31, 2015). It is true

that the records show that Plaintiff's alcohol abuse was in remission in late 2008. Plaintiff told VAMC psychiatrist Patrice Arehart, M.D. in May 2012 that he had a long history of alcohol use but his wife "kept [him] sober for [nine] years" until her death in October 2008. (AR, Doc. No. 7-7 at PageID 660.) Plaintiff's report is consistent with mental health treatment records from Peter Zafriedes, M.D. dated between February and October 2008 that make no mention of alcohol abuse. (AR, Doc. No. 7-9 at PageID 1839-42.)

Contrary to Dr. Heinemann's testimony, however, Plaintiff did not remain sober after the January 1, 2009 alleged disability onset date. When Plaintiff resumed mental health treatment at the Columbus VAMC in May 2012, he said that he had resumed drinking alcohol three months after his wife's death (i.e., January 2009) and had been drinking seven to eight mixed drinks per day. (AR, Doc. No. 7-7 at PageID 660.) This statement is consistent with a March 2009 mental health progress note in which Dr. Zafriedes wrote: "MUST STOP DRINKING!" (AR, Doc. No. 7-9 at PageID 1837.)

Dr. Zafriedes' progress notes dated later that month and in April 2009 do indicate that Plaintiff stopped drinking alcohol. (*Id.* at PageID 1836.) But Plaintiff's sobriety was temporary. Plaintiff did not seek further mental health treatment for approximately three years. (*See* AR, Doc. No. 7-7 at PageID 660.) In 2012, he confirmed that he had not had any mental health treatment in over three years, and said he was no longer taking any psychotropic medications. (*Id.*) Dr. Arehart diagnosed, among other conditions, alcohol dependence and an ethanol-induced mood disorder. (*Id.* at PageID 661.) A urinary drug screen in July 2012 was positive for alcohol. (AR, Doc. No. 7-8 at PageID 1406.)

Plaintiff failed to appear for appointments in July and August 2012, then stopped participating in mental health treatment. (AR, Doc. No. 7-8 at PageID 1403, 1405.) When Plaintiff returned to the Columbus VAMC in December 2013, he said he wanted to "deal with his alcohol use esp[ecially] for self[-]medicating for mood and insomnia." (*Id.* at PageID 1398.) Plaintiff admitted to drinking alcohol daily, specifically "[seven to eight] beers ([twenty percent] vodka) and up to close to [twelve]." (*Id.*) Plaintiff thereafter received treatment from the VAMC Addictive Disorders Division. (*Id.* at PageID 1370.) Although the treatment was initially successful, he relapsed in March 2014. (*Id.*)

On May 7, 2014, Plaintiff was admitted for inpatient treatment of his substance use disorder and said he was "drinking daily and not taking care of himself." (AR, Doc. No. 7-7 at PageID 681, 953.) After Plaintiff completed a Residential Rehabilitation and Treatment Program, he entered a Domiciliary Security Awareness and Training program. (*Id.* at PageID 675.) Upon his discharge from the program on June 20, 2014, Plaintiff reported that he was feeling "a little anxious" but "overall . . . better every single day," and denied alcohol cravings. (*Id.* at PageID 684.)

Plaintiff remained sober for approximately two months. However, he reported in September 2014 that he relapsed for a few weeks beginning in August 2014. (AR, Doc. No. 7-8 at PageID 1339.) In November 2014, Plaintiff told VAMC psychiatrist Ermias Seleshi, M.D. that he "had relapses of binge drinking several times since" his June 2014 inpatient treatment. (*Id.* at PageID 1332.)

Plaintiff missed a February 2015 follow-up appointment with Dr. Seleshi. When he returned in April 2015, he said that he had been sober for two-and-a-half months but

had recently relapsed for ten days. (*Id.* at PageID 1327.) In September 2015, Plaintiff said that he had been sober for seven months. (*Id.* at PageID 1316.) A few months after the end of the relevant period, in March 2016, Plaintiff reported that he had been sober for "a little over one year." (*Id.* at PageID 1311.)

This evidence supports the ALJ's conclusion that Plaintiff engaged in "substantial alcohol abuse for extended periods" during the relevant time period in this case. Therefore, substantial evidence supports the ALJ decision to discount Dr. Heinemann's opinion that Plaintiff's alcohol abuse was not material to his disabling condition because the alcohol use was in remission and "in check" during the relevant period.

In sum, the ALJ addressed both the supportability and consistency factors when she evaluated Dr. Heinemann's opinions, and her explanation of these factors is sufficient to satisfy the applicable regulations. Additionally, substantial evidence supports the ALJ's conclusion that Dr. Heinemann's opinions are not persuasive.

> **2.      The ALJ Adequately Addressed The Supportability And Consistency Factors When She Concluded That Dr. Finnerty's Opinions Were Not Persuasive, And Her Conclusions Are Supported By Substantial Evidence.**

Plaintiff's arguments that the ALJ erred in her evaluation of Dr. Finnerty's opinions are also not well-taken. The undersigned finds that the ALJ complied with the applicable regulations when she concluded that reviewing psychologist Dr. Finnerty's opinions were not persuasive. Further, the ALJ's explanations address the supportability and consistency factors as required by 20 C.F.R. § 404.1520c(b)(2), and her conclusions are supported by substantial evidence.

Plaintiff contends that the ALJ did not properly consider the supportability factor because she "failed to go into any sort of detail at all regarding the level of support provided by Dr. Finnerty." (SE, Doc. No. 10 at PageID 2319.) This contention is incorrect. When the ALJ summarized Dr. Finnerty's opinions, she stated: "Notably, for support, Dr. Finnerty primarily cited to evidence in the record well prior or well after the period at issue." (Decision, Doc. No. 7-11 at PageID 2114.) This statement addressed the supportability factor because it addressed the "objective medical evidence . . . presented by [Dr. Finnerty] to support his . . . medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1).

The ALJ further addressed the supportability factor when she discussed Dr. Finnerty's supporting explanations. *See* 20 C.F.R. § 404.1520c(c)(1). In her summary of Dr. Finnerty's opinions, the ALJ noted his explanation that "[Plaintiff's] alcohol use was 'more likely to have been masking his depression and anxiety (this is consistent with later findings where he continued to experience anxiety and depression despite sobriety)' (20F/3)." (Decision, Doc. No. 7-11 at PageID 2114 (citing AR, Doc. No. 7-10 at PageID 2032).) The ALJ addressed this explanation when she reasoned that "the record does document anxiety and depression despite sobriety but that the documentation just prior to the period at issue, as well as the end of the period at issue and just beyond, document improved functioning in the absence of alcohol abuse." (*Id.* at PageID 2115.) This explanation satisfies the supportability requirement. 20 C.F.R. § 1520c(b)(2) and (c)(1).

The ALJ also adequately addressed the consistency factor by comparing Dr. Finnerty's opinions to the medical and other evidence. (Decision, Doc. No. 7-11 at

PageID 2115.) Specifically, the ALJ cited examples in the record where Plaintiff

attributed his symptoms to alcohol abuse rather than his mental impairments:

> Furthermore, [Plaintiff] reported that it was due to alcohol use that he had
> problems taking medicine, cleaning his room, dressing, bathing,
> bedmaking, and washing clothes (9F/209); that at one time he declined
> addition of any psychiatric medications because he felt that depression had
> been more due to alcohol use (1F/78); and that he indicated that alcohol
> made his depression worse (6F/78).

(*Id.*) The ALJ explained that Dr. Finnerty's opinion—that Plaintiff's alcohol abuse was

not material to his disabling limitations—was inconsistent with "the treatment record

showing improved functioning during times of sobriety" as well as "[Plaintiff's] own

reports." (*Id.*) The ALJ therefore addressed the consistency of Dr. Finnerty's opinions

with other evidence in the record as required by 20 C.F.R. § 1520c(b)(2) and (c)(2),

The ALJ's conclusions are supported by substantial evidence. The ALJ provided a

detailed summary of the medical records documenting Plaintiff's treatment for his mental

complaints, as well as his alcohol abuse. (Decision, Doc. No. 7-11 at PageID 2104-05.)

The ALJ described Plaintiff's reports of depression, anxiety, and drinking problems

during the relevant period, as well as his treatment for alcohol abuse and relapses. (*Id.* at

PageID 2105.) The ALJ concluded that based upon this evidence, "the requirements of

listings 12.04 and 12.06 were met." (*Id.* at PageID 2105-06.)

Because the ALJ found that Plaintiff was disabled "considering all impairments,

including the DAA," the ALJ was required to determine what limitations would remain if

Plaintiff stopped the alcohol abuse. SSR 13-2p, 2013 WL 621536 at *4-5. The ALJ

determined that if Plaintiff stopped the alcohol abuse, his impairments would not meet or

medically equal the criteria of any listed impairment. (Decision, Doc. No. 7-11 at PageID 2106-08.) The ALJ also determined that if he stopped the alcohol abuse, Plaintiff would be capable of performing work in an environment free of fast-paced production requirements and that involved only simple, work-related decisions with few, if any, workplace changes. (*Id.* at PageID 2108.) Considering those limitations, as well as Plaintiff's age, education, and work experience, the ALJ concluded that Plaintiff would be unable to perform his past relevant work but would be able to perform a significant number of jobs in the national economy. (*Id.* at PageID 2115-17.) The ALJ therefore concluded that, because Plaintiff would not be disabled if he stopped the alcohol abuse, Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability. (*Id.* at PageID 2117.)

Plaintiff does not allege that the ALJ failed to consider Plaintiff's alcohol abuse in the manner required by SSR 13-2p. Instead, Plaintiff asserts that the ALJ's conclusion (specifically, that Plaintiff's alcohol abuse was a contributing factor material to the determination of disability) "contradicts" and "flies in the face of . . . Dr. Finnerty's detailed narrative report." (SE, Doc. No. 10 at PageID 2319.) Plaintiff argues:

> As both Dr. Heinemann and Dr. Finnerty explained, both before and after his sobriety, and throughout the relevant time period, [Plaintiff's] condition did not vary with any degree of significance. Tr 70, 1999. The ALJ's decision to reject the opinions of Dr. Heinemann and Dr. Finnerty, at least in part, due to the mistaken belief that [Plaintiff's] alcohol abuse was a material contributing factor significantly prejudiced [Plaintiff's] disability claim. This error alone should constitute reversible error.

(*Id.*) But as explained above, and further explained below, substantial evidence supports the ALJ's conclusions regarding Plaintiff's alcohol abuse during the relevant time period.

The ALJ explained that "documentation just prior to the period at issue, as well as the end of the period at issue and just beyond, document improved functioning in the absence of alcohol abuse." (Decision, Doc. No. 7-11 at PageID 2115.) For example, the ALJ stated that in August 2008, which was before the alleged disability onset date and during a time when Plaintiff had been sober for several years,[7] Plaintiff was "working in a mainframe computer department and mental status exam findings were completely normal (15F/5)." (*Id.* at PageID 2106, 2110 (citing AR, Doc. No. 7-9 at PageID 1840).) The ALJ noted that Plaintiff was "tolerating Wellbutrin, Trileptal, and Trazodone without problems." (*Id.* at PageID 2110.) The ALJ also cited a March 2009 treatment note that indicated Plaintiff had reported being sober for over two weeks and was "feeling much better and more hopeful." (*Id.* at PageID 2106, 2110 (citing AR, Doc. No. 7-9 at PageID 1836).) The ALJ acknowledged that a mental status examination at that time showed an anxious and dysthymic mood but noted that the provider otherwise documented intact insight and judgment, no suicidal or homicidal ideation, no abnormalities of cognition, and normal speech, thought processes, and thought content. (*Id.*)

The ALJ noted that the records showed "no significant, persistent documented treatment in 2009 through 2011." (Decision, Doc. No. 7-11 at PageID 2110.) The ALJ observed that when Plaintiff sought treatment for an enlarged hemorrhoid in May 2012, he was not on any medication for his depression, anxiety, and bipolar disorder, and had not received mental health treatment for approximately three-and-a-half years. (*Id.* (citing

---

[7] Plaintiff reported that he was sober for nine years before the death of his wife in October 2008. (*See* AR, Doc. No. 7-7 at PageID 660, 686.)

AR, Doc. No. 7-7 at PageID 927).) The ALJ noted that Plaintiff reported "drinking [seven] to [eight] mixed drinks daily, usually vodka." (*Id.*) The ALJ further noted that Plaintiff was still drinking alcohol in June 2012, as a progress note showed that Plaintiff's "mood was dysphoric due to relapse and testing was positive for both alcohol and marijuana (9F/277)." (*Id.* (citing AR, Doc. No. 7-8 at PageID 1407).) The ALJ stated that Plaintiff next sought treatment in December 2013, when he admitted to "consuming alcohol daily of the equivalent of [seven] to [eight] beers up to close to [twelve]." (*Id.* at PageID 2110-11 (citing AR, Doc. No. 7-8 at PageID 1398).)

The ALJ recognized that Plaintiff sought substance abuse treatment in February 2014. (Decision, Doc. No. 7-11 at PageID 2111 (citing AR, Doc. No. 7-8 at PageID 1390).) Plaintiff reported he had been drinking "up to a fifth of vodka daily for six months." (*Id.*) The ALJ noted that Plaintiff later relapsed and was admitted for inpatient alcohol abuse treatment in May 2014. (*Id.* (citing AR, Doc. No. 7-7 at PageID 686).) Significantly, Plaintiff "declined [the] addition of any psychiatric medications because he felt that depression had been more due to alcohol use (1F/78) and indicated that alcohol made his depression worse (6F/78)." (*Id.* (citing AR, Doc. No. 7-7 at PageID 686, 935).)

The ALJ also addressed several records dated after that time which showed that Plaintiff's alcohol abuse treatment was relatively successful, which supported her finding that Plaintiff's functioning improved during times of sobriety. The ALJ cited a June 2014 mental health treatment note, dated after Plaintiff had completed almost four weeks of inpatient treatment, where Plaintiff reported that "he felt a little anxious but not depressed and was overall feeling better every single day with no alcohol cravings, no pain, and

28

good sleep (1F/67)." (Decision, Doc. No. 7-11 at PageID 2111 (citing AR, Doc. No. 7-7 at PageID 675).) Mental status findings at that time were essentially normal and included a stable, calm, and pleasant mood and affect; full orientation; good hygiene; well-organized thought processes; normal memory, attention and concentration; fair judgment; and good insight. (*Id.* (citing AR, Doc. No. 7-7 at PageID 677).) The ALJ cited another June 2014 treatment note, dated a few days before Plaintiff's discharge from inpatient treatment, which documented Plaintiff's report that he had no thoughts of suicide and "lived for his autistic son, who could not function without [Plaintiff] (1F/83)." (Decision, Doc. No. 7-11 at PageID 2111 (citing AR, Doc. No. 7-7 at PageID 691).)

The ALJ described Plaintiff's report in November 2014 that he had experienced several relapses of binge drinking since being discharged from treatment in June 2014, and requested Naltrexone to "curb his alcohol craving." (Decision, Doc. No. 7-11 at PageID 2112 (citing AR, Doc. No. 7-8 at PageID 1332).) Although Plaintiff complained of residual depression, poor motivation, low energy, sadness, sleep disturbance, anxiety, tension, and avoidance of others, Plaintiff's psychiatrist documented only a moderately anxious and otherwise euthymic and non-irritable mood. (*Id.* (citing AR, Doc. No. 7-8 at PageID 1332-33).) Other mental status findings were normal and included cooperative, polite, and interactive behavior with no guardedness or tenseness. (*Id.*)

As the ALJ pointed out, when Plaintiff returned for psychiatric follow-up in April 2015, he admitted to a ten-day period of relapse since his last visit, but said he had been sober for two-and-a-half months. (Decision, Doc. No. 7-11 at PageID 2112 (citing AR, Doc. No. 7-8 at PageID 1327).) Plaintiff also said that Naltrexone was helping to reduce

29

his alcohol cravings and that he was caring for his fifteen-year-old son with Asperger's syndrome. (*Id.*) The ALJ further noted that a mental status examination was normal and showed a euthymic mood with no anxiety or irritability, as well as cooperative, polite, and interactive behavior. (*Id.* (citing AR, Doc. No. 7-8 at PageID 1328).)

The ALJ acknowledged that Plaintiff told his mental health provider in August 2015 that he was experiencing increased anxiety, depression, irritability and low energy. (Decision, Doc. No. 7-11 at PageID 2112 (citing AR, Doc. No. 7-8 at PageID 1321).) Although Plaintiff confirmed that he had been sober since his last visit, Plaintiff said he had been out of Sertraline for two days, and attributed his increased symptoms to not having his medication. (*Id.*) A mental status examination upon intake showed a depressed and anxious mood, but an examination later that afternoon showed a euthymic mood and appropriate affect. (AR, Doc. No. 7-8 at PageID 1322-33.) Other mental status findings were essentially normal. (Decision, Doc. No. 7-11 at PageID 2112 (citing AR, Doc. No. 7-8 at PageID 1323).) In September 2015, Plaintiff told his primary care provider that he had been sober for seven months, and his provider documented an appropriate mood and affect. (*Id.* (citing AR, Doc. No. 7-8 at PageID 1316-18).) Plaintiff said he was still taking Naltrexone and Sertraline. (AR, Doc. No. 7-8 at PageID 1316-17.)

Finally, the ALJ cited records dated shortly after the relevant time period that further supported the ALJ's conclusion that Plaintiff's functioning improved with sobriety. For example, the ALJ cited a March 2016 record that documented Plaintiff's report of being sober for one year. (Decision, Doc. No. 7-11 at PageID 2112 (citing AR, Doc. No. 7-8 at PageID 1311).) A mental status examination showed a mildly dysphoric

30

and anxious mood and mildly expansive affect, and other findings were normal. (*Id.*) The

ALJ noted that Plaintiff reported a six-month period of sobriety in September 2016 and

that mental status findings were normal. (*Id.* (citing AR, Doc. No. 7-8 at PageID 1292-

93).) Additionally, Plaintiff reported that although he experienced significant depression

and panic attacks in the past, his mood had been "fairly good in the recent past." (AR,

Doc. No. 7-8 at PageID 1292.)

Based on the ALJ's decision and the record, the undersigned concludes that the

ALJ relied upon substantial evidence to support her conclusions that the balance of the

evidence did not support the opinions of Dr. Finnerty and Dr. Heinemann that alcohol

abuse was not a contributing factor material to the determination of disability.

Finally, Plaintiff argues that Drs. Finnerty and Heinemann provided "the only

actual functional opinions of record" for the relevant time period. (SE, Doc. No. 10 at

PageID 2317.) To the extent that Plaintiff asserts that the ALJ therefore erred by not

adopting them, that assertion is not well-taken. "The responsibility for determining a

claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342

F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). An ALJ is required to

consider medical opinion evidence when determining the RFC but need not adopt them

or any such findings verbatim. *See Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). As

explained above, the ALJ relied on substantial evidence to support her conclusions when

she evaluated the medical evidence, Plaintiff's subjective complaints, and the medical

opinion evidence to conclude that Plaintiff's alcohol abuse was a contributing factor

material to the determination of disability and to formulate the RFC. Because the ALJ's

conclusions are within the permissible "zone of choice" and her findings are supported by substantial evidence, they should be affirmed. *Mullen*, 800 F.2d at 545.

**IT IS THEREFORE RECOMMENDED THAT**:

1.      Plaintiff's Statement of Errors (Doc. No. 10) be OVERRULED;

2.      The Court AFFIRM the Commissioner's non-disability determination; and

3.      The case be terminated on the Court's docket.

> *s/ Caroline H. Gentry*
> Caroline H. Gentry
> United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).